IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

MICROSOFT CORPORATION,

                              Plaintiff,

        v.                                                    1:06-cv-1350-WSD

SILVER STAR MICRO, INC., d/b/a
TECH USA STORE, a/k/a
USA TECH STORE, and
CHASE CAMPBELL,

                              Defendants.

## OPINION AND ORDER

This matter is before the Court on Plaintiff Microsoft Corporation's

("Microsoft" or "Plaintiff") Motion for Sanctions [41], Motion for Summary

Judgment [42], and Motion to Amend Complaint to Conform to Evidence [43].

## I.    INTRODUCTION AND FACTUAL BACKGROUND

This is a case for copyright and trademark infringement.  Microsoft claims

defendant Chase Campbell, through his company Silver Star Micro, Inc., sold

counterfeit copies of Microsoft software.  Defendant Campbell has asserted his

Fifth Amendment privilege against self-incrimination in various pleadings and

litigation events in this case.  As a result, the Defendants have not participated in

certain aspects of discovery and have not contested the positions and facts asserted by Plaintiff in the pending motions.

Plaintiff is an international developer and distributor of computer software. Defendant Silver Star Micro, Inc. is a Delaware corporation that does business as Tech USA Store and USA Tech Store in Atlanta, Ga and on the Internet.  Silver Star Micro distributes computer software.  Defendant Campbell is the sole shareholder and corporate officer of Silver Star Micro (Silver Star Micro and Chase Campbell are referred to collectively as the "Defendants").

Plaintiff sells its software through distributors throughout the United States and the world.  Certain Microsoft software is distributed pursuant to Volume License Agreements, whereby licensees may obtain CD-ROMs containing copies of particular software titles, referred to as "Volume License Media."  The Volume License Media is marked with language restricting redistribution and unauthorized use of the software.[1]  Microsoft generates unique product keys for its software and distributes those product keys with its software.  Each product key is a 25-character

---

[1] The faces of Microsoft volume license media CD-ROMs display the following: "Volume License Product Key Required . . . All use subject to volume license agreement.  Do not make illegal copies of this disc.  **Not for retail or OEM Distribution.  Not for resale.**"  (emphasis in original).

alphanumeric code that must be entered at the time the software is installed on a computer.  The product key is required in order to unlock the software programs.

Plaintiff is the sole owner of the following valid and active copyrights in software registered with the United States Copyright Office and at issue in this case:[2]

1. "Microsoft SQL Server 2003" (Copyright Reg. No. TX 5-195-890);

2. "Microsoft Windows Server 2003" (Copyright Reg. No. TX 5-811-026);

3. "Microsoft Windows XP Professional" (Copyright Reg. No. TX 5-407-055);

_____

[2] Plaintiff's initial and first amended complaints alleged infringement of the first three copyrights and first four trademarks listed herein.  Plaintiff moved to amend its Complaint to conform to the evidence in conjunction with its motion for summary judgment.  Plaintiff now contends six additional copyrights and four additional trademarks were infringed. Fed. R. Civ. P. 15(b) permits litigants to move, at any time, to amend their pleadings to conform them to the evidence. Plaintiff seeks to amend only as to additional copyright and trademark violations because, it argues, the evidence now before the Court shows infringement of those copyrights and trademarks.  The Defendants have not responded to the motion, and the Court deems the motion unopposed.  LR 7.1B, NDGa.  So that the Court may consider whether summary judgment is warranted for all claims of copyright and trademark infringement at issue in this case, Plaintiff's Motion to Amend Complaint to Conform to Evidence [43] is granted.

4.      "Microsoft Office 97 (Professional Edition)" (Copyright Reg. No. TX 4-395-984);

5.      "Microsoft Access 97" (Copyright Reg. No. TX 4-395-639);

6.      "Microsoft Excel 97" (Copyright Reg. No. TX 4-395-640);

7.      "Microsoft Outlook 97" (Copyright Reg. No. TX 4-395-686);

8.      "Microsoft PowerPoint 97" (Copyright Reg. No. TX 4-395-685);

9.      "Microsoft Word 97" (Copyright Reg. No. TX 4-395-687).

Plaintiff is the sole owner of the following valid trademarks registered with the United States Patent and Trademark Office and at issue in this case:

1.      Trademark and Service Mark Reg. No. 1,200,236 ("MICROSOFT") for computer programs and computer programming services;

2.      Trademark Reg. No. 1,256,083 ("MICROSOFT") for computer hardware and software manuals, newsletters, and computer documentation;

3.      Trademark Reg. No. 1,872,264 ("WINDOWS") for computer programs and manuals sold as a unit;

4.      Trademark Reg. No. 1,815,350 (COLORED WINDOWS FLAG

LOGO) for computers, computer peripherals, and computer programs

and manuals sold as a unit;

5.      Trademark Reg. No. 2,744,843 (COLORED FLAG DESIGN) for

computer software and manuals sold as a unit;

6.      Trademark Reg. No. 1,475,795 ("POWERPOINT") for prerecorded

computer programs recorded on magnetic disks;

7.      Trademark Reg. No. 1,741,086 ("MICROSOFT ACCESS") for

computer programs for use with databases and manuals sold as a unit;

8.      Trademark Reg. No. 2,188,125 ("OUTLOOK") for computer

programs, specifically programs providing enhanced electronic mail

and scheduling capabilities and instructional manuals sold as a unit.

In April 2005, Silver Star Micro, doing business as USA Tech Store on the

Internet at www.techusastore.com, distributed to a customer a counterfeit copy of

Microsoft SQL Server 2000.[3]

---

[3] Plaintiff established the counterfeit nature of software at issue in this case through submission of the declaration of Kristi Lamb Bankhead, a Microsoft employee responsible for analyzing and identifying counterfeit Microsoft products. Because the Defendants offered no substantive response to Plaintiff's statement of undisputed facts, the Court deems each fact as admitted.  See LR 56.1B(2), NDGa.

On July 14, 2005, Plaintiff notified the Defendants by letter that they had distributed Microsoft software improperly and demanded that Defendants cease infringing activity.  Defendants received and read the letter.

On September 2, 2005, law enforcement executed a search warrant at Defendants' premises and seized disks containing counterfeit copies of Microsoft Office 97 (Professional Edition) and Microsoft Windows XP Professional.  Law enforcement also seized 72 counterfeit Microsoft Product Key labels and 300 units of Microsoft Volume License Media.  A Microsoft Senior Investigator was present during this search.

In December 2005, Defendants distributed to a customer a volume license CD-ROM of Windows Server 2003 and a counterfeit product key label and product key.

On three separate occasions in March 2006, Defendants distributed to customers Windows XP Professional CD-ROMs which were volume license CD-ROMs, with counterfeit product key labels and counterfeit product keys.  Also in March 2006, Defendants distributed to a private investigator a volume license CD-ROM of Windows XP Professional and a counterfeit product key label and product key.

On June 5, 2006, Plaintiff filed this action.  Plaintiff filed a first amended complaint on November 28, 2006.

In August 2006, Defendants distributed to a private investigator one volume license CD-ROM of Windows Server 2003 and a counterfeit product key label and product key.

Plaintiff alleges copyright infringement, violations of the Digital Millennium Copyright Act, trademark infringement and false designation of origin, and violations of Georgia law for fraudulent trademarks and deceptive trade practices. Plaintiff seeks apportionment of liability jointly against Silver Star Micro, Inc. and Campbell.  Plaintiff seeks statutory damages for its copyright and trademark infringement claims, costs and attorney's fees, and permanent injunctive relief.

## II.    DISCUSSION

### A.    <u>Defendants' Invocation of the Fifth Amendment Privilege</u>

The Court initially considers the implications of Defendants' assertion of Fifth Amendment privileges on the pending summary judgment motion.  On May 24, 2007, defendant Campbell was deposed, individually and in his capacity as Silver Star Micro's Rule 30(b)(6) representative.  Mr. Campbell repeatedly invoked his Fifth Amendment right not to incriminate himself at this deposition.

See U.S. Const. amend V.  In response to Plaintiff's motion for summary

judgment, Defendants again relied on Mr. Campbell's Fifth Amendment rights,

arguing that summary judgment is not appropriate because Mr. Campbell is unable

to raise a genuine issue of material fact without waiving Fifth Amendment

privileges.

It is well-established that litigants in civil cases may decline to testify if their

testimony would tend to incriminate them in a criminal proceeding.  See Wehling

v. Columbia Broadcasting Sys., 608 F.2d 1084, 1086 (5th Cir. 1979), reh'g denied,

611 F.2d 1026 (5th Cir. 1980).  There is no real question here that Mr. Campbell is

under threat of criminal liability for copyright infringement based on Microsoft's

allegations.  See 18 U.S.C. § 2318 et seq.[4]  The Supreme Court has held that a civil

litigant who chooses to assert his Fifth Amendment privilege may not suffer "the

imposition of any sanction which makes assertion of the Fifth Amendment

privilege 'costly.'" Spevack v. Klein, 385 U.S. 511, 515 (1967); accord Malloy v.

---

[4]  The Court notes, however, that corporations do not enjoy Fifth
Amendment privileges.  George Campbell Painting Corp. v. Reid, 392 U.S. 286,
288-89 (1968); In re Grand Jury Subpoena Dated Nov. 12, 1991, FJ 91-5 (MIA),
957 F.2d 807, 809-10 (11th Cir. 1992).  To the extent that Campbell attempted to
assert a privilege on behalf of Silver Star Micro, that assertion was improper.

-8-

Hogan, 378 U.S. 1, 8 (1964).  Defendants allege that the granting of summary

judgment against them would amount to an impermissible "costly" sanction.

Courts have consistently held, however, that the Fifth Amendment cannot be

used for the purpose of frustrating an otherwise meritorious civil case.  "The

plaintiff who retreats under the cloak of the Fifth Amendment cannot hope to gain

an unequal advantage against the party he has chosen to sue.  To hold otherwise

would, in terms of the customary metaphor, enable plaintiff to use his Fifth

Amendment shield as a sword."  Wehling, 608 F.2d at 1087.

Courts repeatedly have held that an adverse evidentiary inference may be

drawn against a party who refuses to testify, and although that adverse inference

alone is not sufficient to warrant summary judgment, summary judgment may be

appropriate if supported by independent evidence.  Baxter v. Palmigiano, 425 U.S.

308, 317-18 (1976); Avirgan v. Hull, 932 F.2d 1572, 1580 (11th Cir. 1991); S.E.C.

v. Scherm, 854 F. Supp. 900, 904-05 (N.D. Ga. 1993).  The Court is in that precise

position here.  Plaintiff has supported its statement of material facts with an

extensive factual record, including deposition testimony and several declarations

with attachments.[5]  Defendants have failed to refute any allegations of undisputed

fact offered by the Plaintiff.  The Court has examined the factual record in detail

and finds that Plaintiff has submitted significant independent admissible evidence

of copyright and trademark infringement.  The Court relies principally on this

independent factual record, rather than on any adverse inference, to establish

grounds for this grant of summary judgment.

### B.    The Standard on a Motion for Summary Judgment

Summary judgment is appropriate where "the pleadings, the discovery and

disclosure materials on file, and any affidavits show that there is no genuine issue

as to any material fact and that the movant is entitled to judgment as a matter of

law."  Fed. R. Civ. P. 56(c).  The party seeking summary judgment bears the

burden of demonstrating the absence of a genuine dispute as to any material fact.

Herzog v. Castle Rock Entm't, 193 F.3d 1241, 1246 (11th Cir. 1999).  Once the

---

[5] This case, unlike Wehling, involves significant independent evidence to support Defendants' wrongful conduct.  The district court in Wehling dismissed the case as a sanction for the plaintiff's assertion of his Fifth Amendment privilege during deposition.  The 11th Circuit reversed, reasoning that the plaintiff was impermissibly penalized for using his Fifth Amendment rights.  In this case, the Court's grant of summary judgment is not a sanction to the Defendants, but rather the appropriate result based upon significant and uncontradicted independent evidence submitted by Plaintiff.

moving party has met this burden, the non-movant must demonstrate that summary judgment is inappropriate by designating specific facts showing a genuine issue for trial.  Graham v. State Farm Mut. Ins. Co., 193 F.3d 1274, 1282 (11th Cir. 1999). "The nonmoving party need not present evidence in a form necessary for admission at trial; however, he may not merely rest on his pleadings."  Id.

The Court must view all evidence in the light most favorable to the party opposing the motion and must resolve all reasonable doubts in the non-movant's favor.  United of Omaha Life Ins. Co. v. Sun Life Ins. Co. of Am., 894 F.2d 1555, 1557-58 (11th Cir. 1990).  "[C]redibility determinations, the weighing of evidence, and the drawing of inferences from the facts are the function of the jury."  Graham, 193 F.3d at 1282.  "If the record presents factual issues, the court must not decide them; it must deny the motion and proceed to trial."  Herzog, 193 F.3d at 1246. But, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party," summary judgment is proper.  Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

The Court's local rules require movants for summary judgment to submit a concise, numbered statement of material facts which the movant contends do not present a genuine issue for trial.  LR 56.1B(1), NDGa.  The movant must support

each fact with citations to evidence in the record.  "This Court will deem each of the movant's facts as admitted unless the respondent: (i) directly refutes the movant's fact with concise responses supported by specific citations to evidence (including page or paragraph number); (ii) states a valid objection to the admissibility of the movant's fact; or (iii) points out that the movant's citation does not support the movant's fact or that the movant's fact is not material or otherwise has failed to comply with the provisions set out in LR 56.1 B.(1)."  Id. 56.1B(2)(a)(2).

### C.   Copyright and Trademark Infringement

Owners of copyrights have exclusive rights to reproduce copyrighted works and distribute copies of the copyrighted work to the public.  17 U.S.C. § 106(1), (3).  To prove copyright infringement, plaintiffs must show that they are entitled to enforce the copyrights at issue and that the defendant copied or distributed the copyrighted works without authorization.  See Feist Publ'ns, Inc. v. Rural Tel. Serv. Co., 499 U.S. 340, 345 (1991); Calhoun v. Lillenas Publ'g, 298 F.3d 1228, 1232 (11th Cir. 2002).

The Digital Millennium Copyright Act ("DMCA") provides additional protections to copyrights of certain works controlled by technological measures.

To establish a claim under the DMCA, the plaintiff must show: "(1) ownership of a valid *copyright* on a work, (2) effectively controlled by a *technological measure*, which has been circumvented, (3) that third parties can now *access* (4) *without authorization*, in a manner that (5) infringes or facilitates infringing a right *protected* by the Copyright Act, because of a product that (6) the defendant either (i) *designed or produced* primarily for circumvention; (ii) made available despite only *limited commercial significance* other than circumvention; or (iii) *marketed* for use in circumvention of the controlling technological measure." Chamberlain Group, Inc. v. Skylink Techs., Inc., 381 F.3d 1178, 1203 (Fed. Cir. 2004) (emphasis in original); 17 U.S.C. § 1201(a)(2) ("No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that . . . is primarily designed or produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title"). "To 'circumvent a technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner; and . . . a technological measure 'effectively controls access to a work' if the measure, in the

ordinary course of its operation, requires the application of information, or a

process or a treatment, with the authority of the copyright owner, to gain access to

the work."  17 U.S.C. § 1201(a)(3).

The Lanham Act provides protections to trademarks and service marks.  A

plaintiff can establish trademark infringement by showing that "its mark was used

in commerce by the defendant without the registrant's consent and that the

unauthorized use was likely to deceive, cause confusion, or result in mistake."

McDonald's Corp. v. Robertson, 147 F.3d 1301, 1307 (11th Cir. 1998) (citing

Burger King Corp. v. Mason, 710 F.2d 1480, 1491 (11th Cir. 1983)); accord 15

U.S.C. § 1114(1)(a) (prohibiting the "use in commerce [of] any reproduction,

counterfeit, copy, or colorable imitation of a registered mark in connection with the

sale, offering for sale, distribution, or advertising of any goods or services on or in

connection with which such use is likely to cause confusion, or to cause mistake, or

to deceive").[6]  "'[C]ommerce' is defined for purposes of the Lanham Act as 'all

_____

[6]  Because the elements of offense are essentially similar, if the defendants
are found liable for trademark infringement under § 1114 of the Lanham Act, they
are also liable for false designation of origin under § 1125(a) of the Lanham Act.
15 U.S.C. § 1125(a); Microsoft Corp. v. Sellers, 411 F. Supp. 2d 913, 919 (E.D.
Tenn. 2006); Microsoft Corp. v. Compusource Distribs., Inc., 115 F. Supp. 2d 800,
807 (E.D. Mich. 2000).

commerce which may lawfully be regulated by Congress.'  It is well settled that as defined 'commerce' includes any intrastate transaction which 'affects' interstate commerce."  <u>Shatel Corp. v. Mao Ta Lumber & Yacht Corp.</u>, 697 F.2d 1352, 1356 (11th Cir. 1983).

### 1.   Discussion

There is no dispute that Microsoft owns the copyrights at issue in this case. <u>See</u> 17 U.S.C. § 410(c) (copyright registration certificates are *prima facie* evidence of copyright ownership).  The first element of a copyright infringement claim is therefore satisfied.  The remaining element - whether the Defendants infringed on Plaintiff's rights as the copyright holder - may be shown in a variety of ways enumerated in the Copyright Act, among them whether the Defendants "reproduce[d] the copyrighted work in copies or phonorecords," or "distribute[d] copies or phonorecords of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending."  17 U.S.C. § 601(1), (3).

The Defendants sold a counterfeit copy of Microsoft SQL Server 2000 to a third party.  Since that distribution is clearly within the protection of the Copyright Act, Plaintiff's motion is granted as to infringement of copyright No. TX 5-195-890.

The Defendants sold counterfeit product keys that facilitated access to volume license CD copies of Microsoft Windows XP Professional and Windows Server 2003.  Each volume license CD-ROM bore the notation that a valid product key was required and that unauthorized distribution or sale was prohibited.  Since the Defendants distributed counterfeit material in breach of the rights authorized by the copyright holder, the Defendants infringed copyrights Nos. TX 5-811-026 and TX 5-407-055.

The Defendants were also found to be in possession of a counterfeit copy of Microsoft Office 97 (Professional Edition), which includes Microsoft Access 97, Microsoft Excel 97, Microsoft Outlook 97, Microsoft PowerPoint 97, and Microsoft Word 97.  Although possession of a copyrighted work is not, by itself, copyright infringement, Khandji v. Keystone Resorts Mgmt., Inc., 140 F.R.D. 697, 700 (D. Colo. 1992), the Copyright Act prohibits unauthorized duplication of copyrighted works.  This Court previously has determined that a defendant commits copyright infringement when counterfeit software is seized from the defendant's possession.  Microsoft Corp. v. Tierra Computer, Inc., 184 F. Supp. 2d 1329, 1332 (N.D. Ga. 2001).  Like Tierra, the undisputed evidence here establishes that the Defendants duplicated Microsoft Office 97 (Professional Edition) without

authorization and therefore infringed on Plaintiff's copyrights on that software. Plaintiff's motion is granted as to copyrights Nos. TX 4-395-984, TX 4-395-639, TX 4-395-640, TX 4-395-686, TX 4-395-685, and TX 4-395-687.

The undisputed evidence also establishes that the Defendants trafficked in counterfeit product keys designed by Microsoft to control installation of Windows XP Professional and Windows Server 2003.  Plaintiff has shown that it implemented a technological control over those programs, namely a 25-character alphanumeric product key.  Because the Defendants wrongfully sold and distributed counterfeit product keys, third parties can now access those programs without authorization from Microsoft.  Plaintiff's motion for summary judgment is granted as to violations of the DMCA regarding Windows XP Professional and Windows Server 2003.

The undisputed evidence next shows that Plaintiff is entitled to summary judgment on some of its trademark infringement claims.  Microsoft has registered each of the trademarks at issue in this case with the United States Patent and Trademark Office.  Registration constitutes *prima facie* evidence of Microsoft's exclusive right to use the marks.  <u>See</u> 15 U.S.C. § 1057(b).  It is also undisputed that counterfeit software sold and distributed by Defendants contained some of the

registered marks at issue in this case.  Specifically, the infringing copies of

Microsoft's copyrighted versions of Microsoft SQL Server 2000, Microsoft

Windows XP Professional, or Microsoft Windows Server 2003 contained the

following registered marks: "MICROSOFT" (Nos. 1,200,236 and 1,256,083),

"WINDOWS" (No. 1,872,264), COLORED WINDOWS FLAG LOGO (No.

1,815,350), and COLORED FLAG DESIGN (No. 2,744,843).  <u>See</u> Bankhead

Decl. ¶ 11.  The undisputed evidence shows that the Defendants distributed

infringing software to North Carolina, Arizona, Ohio, Oregon, New York, and

Georgia, establishing the "use in commerce" requirement for trademark

infringement.  <u>Shatel</u>, 697 F.2d at 1356.

Plaintiff must show that the Defendants' use of their marks were likely to

cause consumer confusion.  Seven factors are used to consider whether a likelihood

of consumer confusion exists:  (1) Type of mark; (2) Similarity of mark; (3)

Similarity of the products the mark represents; (4) Similarity of the parties' retail

outlets (trade channels) and customers; (5) Similarity of advertising media; (6)

Defendant's intent; [and] (7) Actual confusion.  <u>Frehling Enters., Inc. v. Int'l Select</u>

<u>Group, Inc.</u>, 192 F.3d 1330, 1335 (11th Cir. 1999).  Microsoft's trademarks are

associated worldwide with Microsoft products, and there is little doubt that the

Defendants sold infringing software with the intent that its customers believe the software was authorized by Microsoft. "Where, as here, one produces counterfeit goods in an apparent attempt to capitalized upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion." Polo Fashions, Inc. v. Craftex, Inc., 816 F.2d 145, 148 (4th Cir. 1987). Like in Polo Fashions, confusion is presumed here, and the Court grants summary judgment to Microsoft of trademark infringement on Nos. 1,200,236, 1,256,083, 1,872,264, 1,815,350, and 2,744,843.[7]

Plaintiff has not, however, shown infringement of its trademarks related exclusively to the Microsoft Office 97 suite of programs. The Lanham Act and appellate precedent require that a defendant must use a mark "in commerce" to be liable for trademark infringement. 15 U.S.C. § 1114(1)(a); Shatel, 697 F.2d at 1356. The undisputed facts in this case show that the Defendants *possessed* an infringing copy of Microsoft Office 97. The facts of this case do not show that the Defendants used the marks related to Microsoft Office 97 in any sort of

---

[7] Because the elements are essentially the same, the Court also grants summary judgment of false designation of origin in violation of 15 U.S.C. § 1125(a) for marks Nos. 1,200,236, 1,256,083, 1,872,264, 1,815,350, and 2,744,843.

commercial transaction.  In the absence of evidence showing the "in commerce" requirement, the Court denies summary judgment of trademark infringement and false designation of origin as to Trademark Registration Nos. 1,475,795 ("POWERPOINT"), 1,741,086 ("MICROSOFT ACCESS"), and 2,188,125 ("OUTLOOK").

### D.    State Law Claims

Georgia law allows claims for fraudulent trademarks and deceptive trade practices.  O.C.G.A. §§ 23-2-55, 10-1-370 et seq. (the "Uniform Deceptive Trade Practices Act").  The elements of these causes of action are essentially the same as the elements for claims under sections 1114(a) and 1125(a) of the Lanham Act. Computer Currents Publ'g Corp. v. Jaye Commc'ns, Inc., 968 F. Supp. 684, 687 (N.D. Ga. 1997) (considering claim under the Uniform Deceptive Trade Practices Act); SunAmerica Corp. v. Sun Life Assurance Co. of Canada, 890 F. Supp. 1559, 1582 (N.D. Ga. 1994) (considering O.C.G.A. § 23-2-55 and the Uniform Deceptive Trade Practices Act).

For the reasons already explained, the Defendants are liable for trademark infringement and false designation of origin as to Trademark Registration Nos. 1,200,236, 1,256,083, 1,872,264, 1,815,350, and 2,744,843.  The Defendants are

liable as well for violations of Georgia's fraudulent trademarks statute and the Deceptive Trade Practices Act regarding those marks.

### E.   **Apportionment of Liability**

Plaintiff urges the Court to hold defendant Campbell personally liable for Silver Star Micro's copyright and trademark infringement.  The Court agrees that Campbell is personally liable.

"This court has stated the well-settled test for a contributory infringer as 'one who, with knowledge of the infringing activity, induces, causes or materially contributes to the infringing conduct of another.'" Cable/Home Commc'n Corp. v. Network Prods., Inc., 902 F.2d 829, 845 (11th Cir. 1990) (quoting Gershwin Publ'g Corp. v. Columbia Artists Mgmt., Inc., 443 F.2d 1159, 1162 (2d Cir. 1971)).  "Furthermore, this court explicated that the standard of knowledge is objective:  Know, or have reason to know." Cable/Home, 902 F.2d at 845 (internal quotation marks omitted).  An individual is vicariously liable for copyright infringement if he had the right to supervise infringing activity and to receive profits directly from the infringement. Metro-Goldwyn-Mayer Studios Inc. v. Grokster, Ltd., 545 U.S. 913, 930 n.9 (2005).  One can be vicariously liable for

copyright infringement even if ignorant of the infringement.  S. Bell Tel. & Tel. Co. v. Associated Tel. Directory Publishers, 756 F.2d 801, 811 (11th Cir. 1985).

Campbell is liable for the copyright infringement of Silver Star Micro.  As the sole officer and shareholder of Silver Star Micro, Campbell was responsible vicariously for all aspects of the business.  That is, Campbell was, for all practical purposes, Silver Star Micro.  The evidence in this case persuades the Court to find Campbell personally liable for the infringing conduct.[8]

Similarly, for trademark infringement, "[i]f an individual actively and knowingly caused the trademark infringement, he is personally responsible.  A corporate officer who directs, controls, ratifies, participates in, or is the moving force behind the infringing activity, is personally liable for such infringement without regard to piercing of the corporate veil."  Babbit Elecs., Inc. v. Dynascan Corp., 38 F.3d 1161, 1184 (11th Cir. 1994) (internal citations omitted).  For the same reasons that Campbell is personally liable for copyright infringement, Campbell also is liable for the trademark infringement that occurred here.

---

[8] The Court analyzes contributory and vicarious liability under the DMCA in the same manner as determining personal liability for violations of the Copyright Act.  Ellison v. Robertson, 357 F.3d 1072, 1076 (9th Cir. 2004); Gordon v. Nextel Commc'ns & Mullen Adver., Inc., 345 F.3d 922, 925 (6th Cir. 2003).

**F.    <u>Damages</u>**

The Copyright Act allows a successful plaintiff to elect to recover an award of statutory damages for each copyright infringed.  The Copyright Act authorizes statutory damages of $750.00 to $30,000.00 per copyright infringed, determined "as the court considers just."  17 U.S.C. § 504(c)(1).  The Lanham Act also allows statutory damages, in the amount of $500.00 to $100,000.00 per mark infringed, "as the court considers just."  15 U.S.C. § 1117(c)(1).[9]

Microsoft has requested the maximum non-willful statutory damage award.  Mot. for Summary Judgment [42] at 17-22.  The Court agrees that this is an appropriate range of damages, given the serial nature of the Defendants' conduct and that they continued to flagrantly and purposefully infringe even after being told by Plaintiff to desist their infringing activity.[10]

The Court, considering the facts of this case, has determined that an award of $30,000.00 for each of the nine copyrights infringed, for a total of $270,000.00,

_____

[9]  A successful plaintiff may recover separate statutory damage awards under both the Copyright and Lanham Acts.  <u>Nintendo of Am., Inc. v. Dragon Pac. Int'l</u>, 40 F.3d 1007, 1011 (9th Cir. 1994); <u>Tierra</u>, 184 F. Supp. 2d at 1331.

[10]  Defendants continued their infringing activity even after Plaintiff filed this action.

and an award of $25,000.00 for each of the four[11] trademarks infringed, for a total of $100,000.00, is a just award of statutory damages. This award takes into account that the trademarks infringed were associated with the copyright violations, yet were independent wrongful acts justifying an award in the mid-range of the damages authorized by the Lanham Act.

The DMCA also provides for statutory damages. The DMCA authorizes recovery of $200.00 to $2,500.00 for each violation, "as the court considers just." 17 U.S.C. § 1203(c)(3). Microsoft has requested the maximum statutory damage award for each of the 78 violations it alleges. The undisputed evidence establishes that the Defendants *distributed* a total of six counterfeit product keys for the purpose of unlocking copyrighted Microsoft software (two Windows 2003 Server product keys and four Windows XP Professional product keys). The evidence also establishes that law enforcement seized from Defendants' possession 72 other counterfeit product keys. A cause of action under the DMCA requires that a defendant's distribution of counterfeit product keys allows third parties to access a copyrighted work controlled by an effective technological measure. Chamberlain

---

[11] Plaintiff has elected not to seek double recovery on the two trademarks covering the term "MICROSOFT." Mot. for Summary Judgment at 21 n.10.

Group, 381 F.3d at 1203.  This requirement necessarily requires that circumvention devices be distributed in some way to third parties.  Other courts considering awards of statutory damages under the DMCA have granted awards based on the number of circumvention devices sold – that is, distributed – to third parties.  Sony Computer Entm't Am., Inc. v. Filipiak, 406 F. Supp. 2d 1068, 1074 (N.D. Cal. 2005) ("The Court concludes that § 1203(c)(3)(A) authorizes a separate award of statutory damages for each device sold.") (awarding $800.00 for each infringing device sold); Sony Computer Entm't Am., Inc. v. Divineo, Inc., 457 F. Supp. 2d 957, 967 (N.D. Cal. 2006) (awarding $800.00 for each infringing device sold).  Plaintiff has shown six distributions of circumvention devices violating the DMCA.  Plaintiff thus is entitled to a judgment of the statutory maximum $2,500.00 per violation, or a total statutory damage award of $15,000.00.[12]

   Plaintiff also seeks attorneys fees and costs in bringing this action.  The Copyright Act authorizes the Court to award costs and attorney's fees to the prevailing party.  17 U.S.C. § 505.  The DMCA also authorizes an award of reasonable attorney's fees and costs, in the court's discretion.  17 U.S.C. §

---

   [12]  Plaintiff has not sought damages for its claims of fraudulent trademarks and deceptive trade practices under Georgia law, and the Georgia statutes do not proscribe specific damage awards for those claims.

1203(b)(4), (5).  The Lanham Act provides that, "[t]he court in exceptional cases may award reasonable attorney fees to the prevailing party," and the "costs of the action."  15 U.S.C. § 1117(a).

The Court determines this is an appropriate case for an award of reasonable attorney's fees and costs.  Plaintiff has shown copyright and trademark infringement by the Defendants.  The Defendants have not responsibly participated in this action, having previously failed to cooperate with Plaintiff's deposition requests – conduct which the Court was required to sanction [38].  An award of costs and reasonable attorney's fees in bringing Plaintiff's claims under the Copyright Act, the DMCA, and the Lanham Act is warranted.

Plaintiff is directed to submit to the Court, within thirty (30) days of this Order, an affidavit specifying the attorney's fees and expenses incurred in bringing claims under the Copyright Act, the Lanham Act, and the DMCA.  The affidavit is required to be detailed and should describe the specific work performed by each timekeeper on each day, the time expended for the services performed each day,

and the hourly rate charged by each attorney and staff member who performed services.[13]

### G.   **Permanent Injunction**

Plaintiff has requested that a permanent injunction be entered against the Defendants prohibiting continued infringement of Microsoft's copyrights and trademarks.  "[P]ast [copyright] infringement and a substantial likelihood of future infringements . . . normally entitle[s] the copyright holder to a permanent injunction against the infringer . . . ." Pac. & S. Co., Inc. v. Duncan, 744 F.2d 1490, 1499 (11th Cir. 1984); accord 17 U.S.C. 502(a).  A permanent injunction also is appropriate to prohibit future violations of the DMCA if there is a reasonable likelihood of future violations and the plaintiff lacks an adequate alternative remedy at law.  Universal City Studios, Inc. v. Reimerdes, 111 F. Supp. 2d 294, 343 (S.D.N.Y. 2000); 17 U.S.C. § 1203(b)(1) (The Court "may grant temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation, but in no event shall impose a prior restraint on free

---

[13] The affidavit should not include fees or costs ordered to be paid as a sanction for defendant Campbell's prior failure to appear for deposition.  Fees or costs not associated with claims under the Copyright Act, the Lanham Act, or the DMCA also should not be included.

speech or the press protected under the 1st amendment to the Constitution.").  The Lanham Act similarly gives the Court discretion to enjoin trademark infringement. 15 U.S.C. § 1116; Lone Star Steakhouse & Saloon, Inc. v. Longhorn Steaks, Inc., 106 F.3d 355 (11th Cir. 1997) (affirming grant of permanent injunction for trademark infringement).

Plaintiff has established that the Defendants infringed its copyrights and trademarks after being instructed in writing to cease their infringing conduct. These facts show that Defendants are likely to engage in future wrongful conduct. Plaintiff does not have an adequate remedy to prevent damage it would suffer by further infringement by Defendants, and entry of a permanent injunction is appropriate.

### H.   **Plaintiff's Motion for Sanctions**

Finally, Plaintiff moves for sanctions against the Defendants based upon the Defendants' allegedly improper assertion of the Fifth Amendment privilege during defendant Campbell's deposition and based upon the Defendants' failure to supplement discovery responses.

Plaintiff first argues that defendant Campbell waived his Fifth Amendment rights prior to his deposition by answering several of Microsoft's interrogatories.

Plaintiff argues that each response waived Campbell's Fifth Amendment rights as to several entire categories of information.

The Fifth Amendment provides in part that no person "shall be compelled in any criminal case to be a witness against himself." U.S. Const. amend. V. A person may assert his or her Fifth Amendment privileges in civil litigation as well as criminal cases, if their testimony would tend to incriminate them. Wehling, 608 F.2d at 1086. The privilege against self-incrimination is not absolute; it may be waived, and the disclosure of facts waives the privilege as to the details about those facts. Rogers v. United States, 340 U.S. 367, 371-73 (1951). If a witness elects to disclose criminal connections, he is not permitted to decide what details he may disclose. Id.

Plaintiff argues that defendant Campbell waived his Fifth Amendment privilege as to several categories of information, such as the relationship between the various Defendants, the other employees of Silver Star Micro, and Silver Star Micro's distribution of infringing products, when Campbell responded to various interrogatories. The Court has reviewed defendant Campbell's deposition transcript and concludes that his responses at the deposition did not waive his privilege against self-incrimination. All of Plaintiff's questions in deposition

sought information beyond what Campbell disclosed in the interrogatory responses he provided.  Campbell's interrogatory responses provided only information about the general corporate structure of Silver Star Micro, Silver Star Micro's employees, and the distribution by Silver Star Micro of copyrighted products.  The questions asked of Campbell at his deposition sought detailed information about the supervisory relationship between Campbell and his employees and Campbell's actual knowledge of activities which may have been criminal.[14]  Campbell's answers to interrogatories did not generally waive his Fifth Amendment privilege, and he was entitled to assert it at his deposition.

Plaintiff next argues that Mr. Campbell lacked a Fifth Amendment right as to questions over his alleged copyright and trademark infringement because he was not faced with the possibility of self-incrimination.  "[A]n individual seeking to invoke successfully the Fifth Amendment privilege must be faced with 'substantial hazards of self-incrimination.'" Battle v. Barton, 970 F.2d 779, 781 (11th Cir. 1992) (citations omitted).  "These hazards must be 'real and appreciable' and not merely 'imaginary and unsubstantial.'" Id. (citations omitted).  Mr. Campbell here

---

[14] Several of Microsoft's questions even inquired specifically if Silver Star Micro and/or Campbell ever engaged in "criminal activity." E.g., Campbell Dep. at 69, 72, 99, 101.

had a real danger of criminal liability because criminal copyright charges are frequently brought against copyright infringers.  <u>See</u> 18 U.S.C. § 2318 <u>et seq.</u>  Mr. Campbell's assertion of the Fifth Amendment at his deposition was appropriate.

Plaintiff also requests sanctions for Mr. Campbell's refusal to produce corporate records responsive to Plaintiff's document requests, which Plaintiff argues violated the Court's discovery rules.  At his deposition, Campbell admitted that additional corporate records existed which would be responsive to Plaintiff's discovery requests.  He refused to produce these documents because he argued they would tend to incriminate him.

It is well-established that corporations do not enjoy Fifth Amendment protections.  <u>Braswell v. United States</u>, 487 U.S. 99, 102 (1988); <u>In re Grand Jury Subpoena</u>, 957 F.2d at 809-10.  "The law is [also] clear that an individual may not invoke his personal Fifth Amendment privilege to avoid producing the documents of a collective entity that are in his custody, even if his production of those documents would prove personally incriminating."  <u>In re Grand Jury Subpoena</u>, 957 F.2d at 809 (citing Supreme Court precedent).  "Because a corporation can only produce its records through its human representatives, the corollary to this

rule is that a corporate representative may not invoke his personal Fifth Amendment privilege to shield corporate records from a subpoena." Id. at 810.

Campbell testified at his deposition in his personal capacity and as Silver Star Micro's Rule 30(b)(6) representative. Campbell had a valid Fifth Amendment privilege to refuse to provide testimony which would tend to incriminate him, even if the questions might be interpreted as being directed to Silver Star Micro. As to documents, Campbell did not have a privilege to refuse production of responsive corporate records in his possession. The law is clear that corporate records may be discovered, regardless of their propensity to incriminate an individual.

Because the Court grants summary judgment on all of Plaintiff's valid claims and imposes substantial damage awards, the failure of Defendants to produce discoverable documents did not prejudice Plaintiff, and the Court declines to award sanctions for any documents that may have been withheld.

## III.   CONCLUSION

For the foregoing reasons,

**IT IS HEREBY ORDERED** that plaintiff Microsoft Corporation's Motion to Amend Complaint to Conform to the Evidence [43] is **GRANTED**.

**IT IS HEREBY FURTHER ORDERED** that Microsoft's Motion for Summary Judgment [42] is **GRANTED IN PART** and **DENIED IN PART**. Plaintiff is awarded summary judgment for infringement of nine copyrights and a total of five trademarks and is awarded summary judgment for six violations of the Digital Millennium Copyright Act, as well as its claims under Georgia law for fraudulent trademarks and deceptive trade practices.  Plaintiff is awarded total statutory damages of **$385,000.00**, to be apportioned jointly and severally between defendants Silver Star Micro, Inc. and Chase Campbell.

**IT IS HEREBY FURTHER ORDERED** that the Defendants, and their directors, principals, officers, agents, servants, employees, representatives, successors and assigns, are **PERMANENTLY ENJOINED** from copying, distributing, or making any other infringing use of Microsoft software programs, components, End User License Agreements, or Certificates of Authenticity protected by the following Copyright Registration Numbers: TX 5-195-890 ("Microsoft SQL Server 2000"), TX 5-811-026 ("Microsoft Windows Server 2003"), TX 5-407-055 ("Microsoft Windows XP Professional"), TX 4-395-984 ("Microsoft Office 97 Professional Edition"), TX 4-395-639 ("Microsoft Access 97"), TX 4-395-640 ("Microsoft Excel 97"), TX 4-395-686 ("Microsoft Outlook

97"), TX 4-395-685 ("Microsoft PowerPoint 97"), and TX 4-395-687 ("Microsoft Word 97").  The Defendants are also **PERMANENTLY ENJOINED** from offering to the public, providing, or trafficking in counterfeit or unauthorized product keys, knowing or having reason to know that such product keys (a) are primarily designed or produced for the purpose of circumventing activation or validation of Microsoft software, (b) have only limited commercial significance other than to circumvent Microsoft's activation or validation protections, or (c) are marketed by Defendants for use in circumventing Microsoft's activation or validation features.  Defendants are also **PERMANENTLY ENJOINED** from infringing the following registered trademarks: 1,256,083 ("MICROSOFT"), 1,200,236 ("MICROSOFT"), 1,872,264 ("WINDOWS"), 1,815,350 (COLORED WINDOWS FLAG LOGO), and 2,744,843 (COLORED FLAG DESIGN), including manufacturing, assembling, distributing, or offering for distribution any software program, component, End User License Agreement, or Certificate of Authenticity bearing any simulation, reproduction, counterfeit copy, or imitation of Microsoft's trademarks and service marks listed above.  Defendants are also **PERMANENTLY ENJOINED** from using the names, logos, or other variations of any of Microsoft's copyrighted or trademarked software programs in any of

Defendants' corporate names, and from assisting, aiding, or abetting any other person or entity from performing the actions enjoined above.

**IT IS HEREBY FURTHER ORDERED** that Microsoft shall have up to and including February 11, 2008 to submit an affidavit supporting its costs and reasonable attorney's fees incurred in bringing claims for trademark and copyright infringement and violations of the DMCA.

**IT IS HEREBY FURTHER ORDERED** that Microsoft's Motion for Sanctions [41] is **DENIED**.

**SO ORDERED** this 9th day of January, 2008.

_____
WILLIAM S. DUFFEY, JR.
UNITED STATES DISTRICT JUDGE